■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL MACKLIN, Appellant. [608 NYS2d 509] —Appeal by the defendant from a judgment of the County Court, Dutchess County (Hillery, J.), rendered October 30, 1990, convicting him of murder in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and statements made by him to law enforcement authorities. Justice

Bracken has been substituted for former Justice Eiber *(see,* 22 NYCRR 670.1 [c]).

Ordered that the judgment is reversed, on the law and the facts, that branch of the defendant's omnibus motion which was to suppress statements to law enforcement authorities is granted, the plea is vacated, and the matter is remitted to the County Court, Dutchess County, for further proceedings on the indictment.

The defendant contends that his questioning at police barracks for approximately six hours before being given *Miranda* warnings was custodial in nature, and, therefore, that all statements made by him prior to and after being read his *Miranda* rights should be suppressed *(see, Miranda v Arizona,* 384 US 436). We agree.

In applying the standard of whether a reasonable person, innocent of any crime, would have believed he was in police custody *(see, People v Yukl,* 25 NY2d 585, 589, *cert denied* 400 US 851), the factors to be considered include the amount of time the individual spent with the police, whether his freedom of action was significantly restricted, the location of the questioning and atmosphere under which he was questioned, his degree of cooperation, whether he was apprised of his constitutional rights, and whether the questioning was investigatory or accusatory in nature *(see, People v Bailey,* 140 AD2d 356, 358). Upon consideration of these factors, we find that an innocent person in the defendant's circumstances would not have believed he was free to leave the presence of the police.

The defendant initially agreed to accompany a State Trooper to the barracks for questioning at around 11:00 P.M. on March 10, 1987, and he was thereafter questioned continuously by several different State Troopers for six hours before being apprised of his constitutional rights at around 5:30 A.M. the next morning. As the questioning progressed, an innocent person in the defendant's position would have believed that he was a suspect and was not free to leave. His explanation of the wounds on his hands was met with scepticism, and the troopers informed the defendant that he fit the description of someone they were looking for, and that they were attempting to verify his alibi. After initially assuring the defendant that he would be provided with a ride home from the barracks, the troopers subsequently ignored his statements that he had to go to work in the morning and did not offer him transportation home.

Moreover, it is apparent that the troopers had probable

cause to arrest the defendant well before apprising him of his constitutional rights. The victim was stabbed in a parking lot in Fishkill approximately two hours before the defendant was found walking along a road by a State Trooper about 1½ miles from the murder site. The defendant, who fit the general description of a "[t]all black man" wanted in connection with the stabbing, seemed nervous when the trooper approached. He put his hands in his pockets, began walking rapidly away, and gave inconsistent answers to the trooper regarding his reason for being at that location. At the trooper's request, the defendant removed his left hand from his pocket, revealing a bloody bandage. The defendant then unwrapped the bandage to show a fresh cut. Evidence elicited at the hearing also established that the defendant had fresh scratches on his face, one of which extended from his eye to his jaw.

The defendant accompanied the trooper to the barracks for questioning, and, around 2:30 A.M., he attempted to toss away a knife of the type used in the murder. At around 3:00 A.M., the defendant stated to a trooper "I'm not going to tell you anything * * * about killing any woman till you get me the proper help", even though the troopers had not mentioned to the defendant that they were investigating the stabbing death of a woman. The investigators were also aware, prior to 5:30 A.M. that the defendant had given them false information in connection with his alibi. Under all the circumstances, we find that " 'the entire confrontation was designed to deliberately subjugate the defendant to the authority of the police and to extract a confession without the benefit of the preinterrogation warnings' " (People v Weaver, 177 AD2d 809, 810, quoting from People v McIntyre, 138 AD2d 634, 636).

The statements made by the defendant prior to the Miranda warnings should be suppressed along with any statements made after the warnings were issued, as the defendant was in continuous police custody, and there was not such a pronounced break in interrogation that the defendant was returned in effect to the status of one who was not under the influence of questioning (see, People v Chapple, 38 NY2d 112; People v Daniels, 189 AD2d 892; People v Anderson, 178 AD2d 605).

The defendant's remaining contention is without merit. Bracken, J. P., Lawrence, O'Brien and Santucci, JJ., concur.