■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WILLIAM A. HARDY, JR., Respondent. [636 NYS2d 459] —White, J. Appeal from an order of the County Court of St. Lawrence County (Nicandri, J.), entered January 27, 1995, which granted defendant's motion to suppress evidence.

We affirm County Court's suppression of inculpatory oral and written statements defendant gave to the police on May 31, 1994 since its determination is not erroneous as a matter of law and is supported by the record (see, People v Smith, 214 AD2d 845, 847, lv denied 86 NY2d 741).

A tragic fire occurred at a residence in the City of Ogdensburg, St. Lawrence County, at approximately 8:30 A.M. on May 31, 1994. Police Officer John Kennedy observed defendant at approximately 9:45 A.M. standing on the sidewalk in front of the residence and asked him what he knew about the fire. Defendant, a 17-year-old mentally retarded youth, told Kennedy that his uncle lived in the residence and that a young child who also lived there could have started the fire because he often played with a lighter. Thereafter, also at the fire scene but at approximately 11:50 A.M., Kennedy and Timothy Vinch, a firefighter, spoke to defendant who essentially repeated what he had told Kennedy and offered to show the men where the fire had started. The men entered the residence with defendant, who led them to a rear bedroom and pointed to an area on the floor near some magazines where the young child allegedly played with the lighter. At approximately 5:00 P.M., Kennedy and Vinch went to defendant's residence where Kennedy told defendant's mother, her boyfriend (hereinafter collectively referred to as defendant's parents) and defendant that Sergeant Kevin Fee would like to talk to defendant at the fire scene. Defendant voluntarily agreed to accompany the men back to the fire scene where he repeated his version of the events to Fee and again indicated where he thought the fire had started. Defendant then agreed to go with Fee to the police station.

Upon arrival at the police station, Kennedy and Fee placed defendant in a large conference room where they engaged him in a general conversation before asking him about the young child playing with the lighter. During the course of the conversation, in which he was urged to tell the truth, defendant admitted that he was in the residence the morning of the fire and that he and the young child had been playing with a lighter when some magazines caught fire, whereupon defen-

dant panicked and left. Fee then sent for Assistant Fire Chief Frank Le May. When Le May arrived, defendant repeated what he had told Fee. Le May told defendant that he did not think the fire had started in that manner, at which point defendant put his head down and said, "I did it." In reply to Fee's question, "What did you do?", defendant replied, "I started the fire." Fee next asked "How?"; defendant replied "with this", reaching into his pocket and pulling out a lighter. Fee then asked an additional question before directing Kennedy to bring defendant's parents to the police station. After ascertaining that neither defendant nor his parents wanted to see each other, Fee administered the *Miranda* warnings to defendant at 6:25 P.M. Defendant then proceeded to provide the police with an inculpatory written statement that was completed at 7:10 P.M.

County Court concluded that the questioning of defendant should have ceased and that he should have been *Mirandized* when he admitted to being in the residence at the time that the fire started. County Court found that the questioning became interrogative at that point and that the police overreached in obtaining defendant's oral confession, particularly in light of his limited mental capacity. For the reasons which follow, we agree with County Court's findings.

Whether defendant's oral statements are admissible depends upon whether he was in police custody when he made them, thereby requiring the administration of *Miranda* warnings (*see, People v Tankleff*, 199 AD2d 550, 552, *affd* 84 NY2d 992). A suspect is considered to be in police custody if a reasonable person, innocent of any crime, would, in the defendant's position, not think that he or she was free to leave (*see, People v Centano*, 76 NY2d 837, 838; *People v Yukl*, 25 NY2d 585, 589, *cert denied* 400 US 851). The factors to be considered in applying this standard include the amount of time the person spent with the police, whether his or her freedom of action was significantly restricted, the location of the questioning and the atmosphere under which it was conducted, the person's degree of cooperation, whether he or she was apprised of his or her constitutional rights and whether the questioning was investigatory or accusatory in nature (*see, People v Macklin*, 202 AD2d 445, 446, *lv denied* 83 NY2d 912).

As it is undisputed that defendant was a cooperative witness who voluntarily accompanied the police to the police station, where he was unrestrained and was not questioned for an inordinate amount of time, it is clear that he was in a noncustodial situation prior to his critical admission of being

in the residence when the fire started (*see, People v Smith, supra,* at 847). The issue now presented is whether this noncustodial situation was transformed into a custodial one prior to defendant's inculpatory oral admissions.

We are persuaded that it was transformed for two reasons. First, it is evident that a person in defendant's position, having admitted to playing with a lighter and being in the residence at the time the fatal fire began, would not think that he or she was free to leave (*see, People v Ripic,* 182 AD2d 226, 235-236, *appeal dismissed* 81 NY2d 776). Second, under *Miranda,* interrogation refers not only to express questioning, but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response (*see, People v Ferro,* 63 NY2d 316, 322, *cert denied* 472 US 1007).

Here, two taped telephone conversations show that the purpose of confronting defendant with Le May was to elicit incriminating statements. In the first conversation with Lieutenant Andrew Wells, Fee stated: "when we started, [defendant] was making disclosures that he and the little boy were doing it, and we let him play for that for a while. [The Chief] said not to advise him of his rights until he made some admissions. Then we had LeMay go in there. The kid spilled his beans to LeMay. He tried to explain how the fire started. [LeMay] said, 'It didn't happen that way', and the kid rolls over and immediately said, 'Hey, I started it' ". In a second conversation, Fee remarked, "we had identified somebody really quickly and we finagled him and he rolled over". This evidence, coupled with defendant's limited mental capacity, leads to only one conclusion; defendant was interrogated within the meaning of *Miranda* and should have been given the required warnings, at the latest, prior to speaking to Le May (*see, Rhode Is. v Innis,* 446 US 291, 300-302).

Lastly, even though defendant's written statement was preceded by *Miranda* warnings, it was properly suppressed as it immediately followed the unwarned oral statements (*see, People v Bethea,* 67 NY2d 364, 368; *People v Chapple,* 38 NY2d 112, 115).

Cardona, P. J., Mercure, Casey and Spain, JJ., concur. Ordered that the order is affirmed.