■ The People of the State of New York, Appellant, v Stephen Wright, Also Known as Steven Wright, and Keon Thomas, Respondents. [778 NYS2d 59]—

Appeal by the People from so much of an order of the Supreme Court, Queens County (Grosso, J.), dated March 12, 2003, as, after a hearing, granted those branches of the separate omnibus motions of the defendants Stephen Wright, also known as Steven Wright and Keon Thomas which were to suppress their statements to law enforcement authorities.

Ordered that the order is reversed insofar as appealed from, on the law, those branches of the defendants' respective omnibus motions which were to suppress their statements made to law enforcement authorities are denied, and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent herewith.

Shortly before 3:00 A.M. on the morning of September 30, 2001, Police Officers Lawrence Zacarese and Gerard Sharkey received a radio report that two men were breaking into a maroon-colored car in the vicinity of 194th Street and 122nd Avenue in a residential section of Queens. When the officers arrived at the location, they saw a maroon-colored Toyota Camry parked in front of 194-01 122nd Avenue, a private home. The defendant Keon Thomas was in the driver's seat of the Camry, and the defendant Stephen Wright, also known as Steven Wright, was in the front passenger seat. As Officer Zacarese approached the Camry, he noticed that there was a man lying on a ledge underneath a window of the adjacent home. Another man, dressed in dark clothing, was standing toward the backyard of the home, about 15 feet away from the man on the window ledge. The man on the window ledge was subsequently identified as Claude Richard, and the man in the yard was identified as Kevin Coley. Before the officers could reach the Camry and speak to its occupants, Richard jumped down from the window ledge, and both he and Coley fled into the backyard of the premises.

When the officers reached the Camry, Officer Sharkey asked the defendant Thomas for his driver's license, the automobile's

registration, and the insurance card for the vehicle. Although Thomas gave Sharkey his driver's license, he was "fumbling around," and could not find the registration or insurance card for the Camry. At this point, additional officers arrived at the scene and detained the defendants while Zacarese and Sharkey pursued the men who fled into the backyard of the adjacent home. After apprehending those suspects, Zacarese and Sharkey investigated, and found evidence to confirm their belief that an attempt had been made to burglarize the premises at 194-01 122nd Avenue. Burglar's tools were recovered from the backyard of the premises, a security gate covering a window was dislodged, and screws which had been removed from the security gate were on the ground. The homeowner confirmed that the security gate was not tampered with when he last saw it, and that he did not know either of the individuals who apparently attempted to break into his residence or the occupants of the Camry.

When Officer Zacarese returned to the Camry, he was informed by his Sergeant that the defendant Thomas was not the registered owner of the Camry, and that the defendants gave "suspicious" answers when questioned about why they were parked on the corner of 194th Street and 122nd Avenue at that time of the night. Zacarese also noticed that both defendants were wearing Ralph Lauren sweatshirts identical to the sweatshirt worn by the burglary suspect Coley. Zacarese placed Thomas and Wright, who were already handcuffed, under arrest for their involvement in the attempted burglary and the possible theft of the Camry. All four men were then transported to the precinct.

The defendant Thomas was advised of his *Miranda* rights (*see Miranda v Arizona,* 384 US 436 [1966]) at approximately 4:25 A.M., and he agreed to waive his rights and answer questions. Thomas admitted that Claude Richard asked him for a ride to Queens so that Richard could steal a car, and that Richard promised to pay him $100 for the ride. Later that morning, at about 8:15 A.M., the defendant Wright was advised of his *Miranda* rights and also agreed to answer questions. Wright told the police that he and his companions were driving in the vicinity of 194th Street and 122nd Avenue when Richard pointed to a Honda Civic that he wanted to break into. Richard then allegedly told Thomas to park down the block and wait for him. According to Wright, Richard broke into the Honda Civic, but did not steal it because the car alarm sounded, and the vehicle later began to shake. After taking Wright's statement, Officer Zacarese returned to the vicinity of 194th Street and 122nd Av-

enue, where he found a maroon Honda Civic that had a damaged steering column and ignition, and a cut battery cable.

The defendants were subsequently indicted on charges including attempted burglary in the second degree, and both moved, inter alia, to suppress their statements. Following a *Huntley* hearing (*see People v Huntley*, 15 NY2d 72 [1965]), the Supreme Court suppressed the statements, finding that while the officers had the initial right to question the defendants about why they were parked in the Camry, the information obtained at the scene did not provide the probable cause necessary to handcuff the defendants and transport them to the precinct. In this regard, the Supreme Court reasoned that the only connection between the occupants of the Camry and the two men who were attempting to break into the adjacent residence was the fact that both defendants were wearing sweatshirts identical to the sweatshirt worn by Coley. The People appeal, contending that under the totality of the circumstances, the police possessed probable cause for the arrests. We agree.

As our dissenting colleague concedes, the police officers clearly had an articulable reason to approach the defendants, and request information concerning their identity, the ownership of the vehicle, and their reason for being in the area (*see People v Hollman*, 79 NY2d 181, 191 [1992]; *People v De Bour*, 40 NY2d 210 [1976]). The articulable reason for this initial approach was provided by the officers' testimony that they received a radio report indicating that two men were breaking into a maroon car in the vicinity of 194th Street and 122nd Avenue, and that upon arriving at this location, they found the defendants seated inside a Toyota Camry matching that description. Furthermore, when the officers realized that they interrupted an apparent burglary in progress at the adjacent residence, and that the defendant Thomas had no proof of the Camry's ownership, they had reasonable suspicion to believe that the defendants were involved in criminal activity. Thus, the officers' decision to detain the defendants at the scene while they attempted to apprehend the two suspects who fled was fully justified.

Once the attempted burglary was confirmed, the police possessed probable cause to arrest the occupants of the Camry as well as the fleeing suspects. Probable cause to arrest requires the existence of facts and circumstances which, when viewed as a whole, would lead a reasonable person possessing the same expertise as the arresting officer to conclude that an offense has been or is being committed, and that the defendant committed or is committing that offense (*see People v Bigelow*, 66 NY2d 417, 423 [1985]; *People v McRay*, 51 NY2d 594 [1980]; *People v*

*Hicks,* 287 AD2d 649 [2001]; *People v Guo Fai Liu,* 271 AD2d 695, 696 [2000]). A finding of probable cause does not, however, require the same quantum of proof necessary to sustain a conviction, or to establish a prima facie case (*see People v Bigelow, supra* at 423; *People v McRay, supra* at 602). Rather, "it need merely appear more probable than not that a crime has taken place and that the one arrested is its perpetrator" (*People v Hill,* 146 AD2d 823, 824 [1989]; *see People v Attebery,* 223 AD2d 714, 715 [1996]). Moreover, in determining whether a police officer has probable cause for an arrest, "the emphasis should not be narrowly focused on . . . any . . . single factor, but on an evaluation of the totality of circumstances, which takes into account 'the realities of everyday life unfolding before a trained officer who has to confront, on a daily basis, similar incidents' " (*People v Bothwell,* 261 AD2d 232, 234 [1999], quoting *People v Graham,* 211 AD2d 55, 58 [1995]).

An example of taking the realities of everyday life into account is provided by this Court's decision in *People v Attebery* (*supra*). In that case, a Mount Vernon police officer received a radio transmission concerning two black males who were ringing doorbells during the morning in a certain specified neighborhood. The radio transmission also indicated that the two males had previously been in a certain car. The officer saw a car fitting the description parked outside of a residence with a person in the driver's seat. He then looked at the house and saw two black males crouched down by a basement window. When the officer drove by the home a second time, the two men drove away. He radioed a description of the two men, and they subsequently were apprehended and arrested. In concluding that the defendant's arrest was supported by probable cause, this Court observed that "[g]oing from house to house ringing doorbells in a residential neighborhood at a time of day when many residents are away working, accompanied by a driver in a nearby vehicle, and fleeing at the sight of a uniformed officer before the officer had time to take any action, is a well-recognized standard operating procedure for burglars. Common sense, coupled with the totality of the circumstances, fully supports the conclusion that [the officer] had reasonable grounds to believe that the defendant and his companion had trespassed upon the property . . . and had attempted unlawfully to enter the house through the basement window for the purpose of burglarizing it" (*People v Atteberry, supra* at 715).

The realities of everyday life and common sense similarly support our conclusion that the officers in this case had probable cause to arrest the defendants once their investigation at

the scene uncovered evidence to confirm their reasonable suspicion that an attempted burglary occurred. Here, police officers investigating a possible auto theft in a residential neighborhood found the defendants seated inside a vehicle which matched the general description of a car which may have been stolen. As Officer Zacarese initially approached the Camry where the defendants were seated, he observed two men who were apparently attempting to break into the adjacent residence, and who fled before he could reach the Camry. When questioned about their presence in the neighborhood, where they did not reside, at about three o'clock in the morning, the defendants gave answers which a police sergeant found to be suspicious. Since the officer could clearly see a man lying on the window ledge of the home and a second man standing in the yard from his vantage point near the Camry, it can be reasonably inferred that the occupants of the Camry also had a full view of the premises, and of the activities of these two men. In addition, when the fleeing suspects were apprehended, the officers found that both of the defendants were wearing Ralph Lauren sweatshirts which were identical to the sweatshirt worn by one of the men who had fled. While we do not suggest that this fact alone is sufficient to link the defendants to the attempted burglary, it is part of a totality of circumstances which would lead a reasonable person possessing the same expertise as the arresting officer to conclude that the defendants were acting in concert with the two men who were interrupted in the process of breaking into the home.

Taking all of the surrounding facts into consideration, we find that the police had a reasonable basis to believe that an attempted burglary had been committed, and that it was more probable than not that the defendants, seated in a parked car directly in front of the subject residence, were participating in the crime by acting as lookouts in the getaway vehicle (*see People v Guo Fai Liu, supra; People v Attebery, supra; People v Burnside,* 254 AD2d 98 [1998]; *People v Kelland,* 171 AD2d 885 [1991]). We further note that while our dissenting colleague emphasizes the fact that the Camry in which the defendants were seated had not been reported stolen, and bore no sign of forcible entry, the defendant Thomas was unable to produce the vehicle's registration or an insurance card for it, and it could not be conclusively established at the scene that he was an authorized user of the vehicle. In any event, regardless of the status of the Camry, the officers possessed probable cause to arrest the defendants for their role in the attempted burglary. Krausman, J.P., Adams and Cozier, JJ., concur.

Goldstein, J., dissents and votes to affirm the order insofar as

appealed from, with the following memorandum: The police originally responded to the scene based upon a 911 telephone call that two men were breaking into a maroon car in the vicinity of 194th Street and 122nd Avenue in Queens County. The defendants' vehicle was maroon in color and parked in the vicinity of 194th Street and 122nd Avenue. Based upon that information, there is no dispute that the police had an articulable basis to request information of the defendants (*see People v Hollman,* 79 NY2d 181, 190-191 [1992]; *People v Harrison,* 57 NY2d 470, 475 [1982]).

The police asked the defendant Keon Thomas, who was seated in the driver's seat, for his license, insurance card, and registration. He produced his license but could not find the registration or insurance card. At that juncture, the police determined that the defendants were not free to leave and there was sufficient basis for an investigatory stop (*see People v Hicks,* 68 NY2d 234 [1986]). The totality of the circumstances, including the 911 telephone call and the early morning hour, provided the police with reasonable suspicion that criminal activity was afoot justifying holding the defendants for a reasonable period while conducting a further investigation (*see People v Ingle,* 36 NY2d 413 [1975]; *People v Alio,* 255 AD2d 448 [1998]).

Although the defendants' vehicle was maroon in color, it bore no signs of forcible entry. The defendants made no attempt to flee the scene. The vehicle occupied by them had not been reported stolen. The police acknowledged that they ultimately "obtained" the registration and insurance card and were able to identify the name and address of the owner of the vehicle.

While investigating the defendants the police ascertained that there was a burglary in progress at a nearby dwelling. The police acknowledged that they never saw the alleged burglars near the defendants' car. While the alleged burglars attempted to flee, the defendants made no such attempt.

At the scene, the only "evidence" uncovered by the police that the occupants of the vehicle were possibly involved in the attempted burglary was the fact that the defendants and one of the alleged burglars were all wearing Ralph Lauren sweatshirts bearing the identifying trade name "R.L." One of the officers who testified at the hearing noted that the Sergeant informed him at the scene that "the story [the defendants] had provided was a little suspicious." However, the Sergeant did not testify and the officers who testified at the hearing were unable to shed any light on what the defendants in fact said.

The People bore the burden of coming forward with evidence that reasonable suspicion ripened into probable cause (*see People*

*v Edwards,* 95 NY2d 486, 491 [2000]; *People v Bouton,* 50 NY2d 130, 135 [1980]). The People failed to meet that burden.

The defendants cannot be linked to the attempted burglary based upon the fact that they and one of the burglars were wearing a popular fashion item worn by many others. The conclusion of the police that the defendants' responses were "a little suspicious" was "worth nothing" (*People v Bouton, supra* at 136; *see People v Carney,* 58 NY2d 51 [1982]). "As on a warrant application, it is the responsibility of the neutral court, not the police, to determine whether" there was probable cause (*People v Bouton, supra* at 135) and conclusions of the police unsupported by objective facts are insufficient (*see People v White,* 117 AD2d 127, 132 [1986]; *People v Ferguson,* 115 AD2d 615, 616 [1985]).

In support of their claim that reasonable suspicion ripened into probable cause to arrest, the People rely upon *People v Attebery* (223 AD2d 714 [1996]) and *People v Johnson* (102 AD2d 616 [1984]). Both of these cases are clearly distinguishable. In *People v Attebery* (*supra*) the defendant was a pedestrian who fled from the police into the burglarized residence. In *People v Johnson* (*supra*), a car was stopped on the ground that the driver matched the description of a perpetrator of a recent robbery and the proceeds of the robbery were found in the vehicle driven by the defendant.

Contrary to the conclusion of the majority, the defendant Thomas was not required to "conclusively" establish that he was an authorized user of the vehicle to avoid arrest (*see People v Bramble,* 207 AD2d 407 [1994]). The fact that the operator of the vehicle was not the registered owner of the vehicle violated no law and did not constitute a suspicious circumstance (*see People v Bramble, supra* at 408).

Further, the defendants engaged in no conduct linking them to the burglary in progress or the alleged perpetrators of the burglary in progress. That the defendants may have been able to observe the alleged perpetrators of the burglary was not an indication of complicity (*see People v Sanchez,* 276 AD2d 723, 724 [2000]). Nor may evidence acquired subsequent to the illegal arrest be used to bootstrap the conduct of the police (*see People v De Bour,* 40 NY2d 210 [1976]).

In view of the foregoing, there is no basis in this record to reverse the order of the Supreme Court insofar as appealed from.