*666 OPINION OF THE COURT
Robert J. Collini, J.
A combined Dunaway ¡Huntley[1] hearing and “chemical test refusal hearing” (Vehicle and Traffic Law § 1194 [2] [f|) having been held before this court on October 4, 2013 on those branches of defendant’s omnibus motion to suppress evidence, and upon consideration of the arguments of counsel,[2] it is decided as follows:
Findings of Fact
Police Officer Scott Samarisi of the 122nd Precinct testified on behalf of the People. He was the sole witness at this hearing. Having observed his testimony and overall demeanor, the court finds his testimony credible in all respects.
A police officer with a seven-year tenure with the New York City Police Department, he received training in the recognition of individuals under the influence of alcohol and drugs and made approximately 75 arrests for driving under the influence (Vehicle and Traffic Law § 1192).
PO. Samarisi was working on December 29, 2012 from 11:15 p.m. to 7:50 a.m. on December 30, 2012 inside the 122nd Precinct as a telephone switchboard operator under the supervision of his lieutenant-supervisor at the desk.
At 1:30 a.m. on December 30, 2012, defendant — who had three small children with him — came inside the precinct to report that he was in an accident. He claimed that another person cut off his vehicle at Amboy Road and Armstrong Avenue; that person (a male) exited his car and claimed that defendant sideswiped his vehicle while they were driving.
Defendant continued that the other driver possessed a tire jack and that he had swung it at him. Over the course of approximately five minutes, defendant was incapable of explaining to PO. Samarisi specifically how the other driver allegedly threatened him with the jack.
PO. Samarisi observed a strong odor of alcohol on defendant’s breath; red, watery eyes; an unsteady gait; and slurred speech. *667 It was his opinion that defendant was intoxicated. He asked defendant if he had anything to drink, to which he replied that he was driving from a family party and had only a couple of teas. He added that his Econoline van was parked across the street, which EO. Samarisi did visually observe.[3]
Police Officers Morales and Scarran from the Staten Island Task Force — who were at the precinct when defendant was present — were asked by EO. Samarisi to administer a portable breath test (PBT) to defendant. (EO. Samarisi indicated that his PBT was not readily available, but that he had used that device numerous times.)
He was told that if he passed the test, he would go home; if he did not pass the PBT, he would be arrested. The results of the PBT[4] (referring to the Intoxilyzer S-D2) showed defendant’s blood alcohol content as .17%. He was immediately placed under arrest at that time (approximately 2:26 a.m.).
Immediately following his arrest, defendant was removed to the 120th Precinct intoxicated driver testing (IDT) room. EO. Samarisi drove defendant to the 120th Precinct in a marked police vehicle.
Police Officer Goldberg of the Highway Unit was at the IDT room and offered defendant — on video, which is in evidence — a separate breath test and a physical coordination test. This occurred at approximately 3:16 a.m. and EO. Samarisi was present. Defendant twice refused to submit to the breath (chemical) test and the coordination test.
Conclusions of Law
At a Huntley hearing, the People must prove the voluntariness of a defendant’s statement — and, if applicable, a waiver of his Miranda rights — beyond a reasonable doubt (People v Rosa, 65 NY2d 380, 386 [1985]; People v Higgins, 28 AD2d 1016 [3d Dept 1967]).
The Miranda rule was summarized by our Court of Appeals:
“The Miranda rule protects the privilege against self-incrimination and, ‘because the privilege applies only when an accused is “compelled” to testify, the safeguards required by Miranda are not trig *668 gered unless a suspect is subject to “custodial interrogation” ’ (People v Berg, 92 NY2d 701, 704 [1999]). The standard for assessing a suspect’s custodial status is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave (see People v Harris, 48 NY2d 208, 215 [1979]; People v Yukl, 25 NY2d 585, 589 [1969], cert denied 400 US 851 [1970])” (People v Paulman, 5 NY3d 122, 129 [2005]; see also People v Tankleff, 84 NY2d 992, 994 [1994]).
The factors to be considered to determine whether a suspect is in custody include: (1) the amount of time spent with the police; (2) whether the suspect’s freedom of action was restricted; (3) the location and atmosphere under which the questioning took place; (4) the suspect’s degree of cooperation; (5) whether constitutional rights were administered; and (6) whether the questioning was investigatory or accusatory in nature (People v Centano, 76 NY2d 837, 838 [1990]; People v Hardy, 223 AD2d 839, 840 [3d Dept 1996]; People v Macklin, 202 AD2d 445, 446 [2d Dept 1994], lv denied 83 NY2d 912 [1994]; People v Bailey, 140 AD2d 356, 358 [2d Dept 1988]). These factors are all to be considered but none are, in and of themselves, dispositive. The court must look to the totality of the circumstances (Stansbury v California, 511 US 318, 322 [1994]; People v Coggins, 234 AD2d 469, 470 [2d Dept 1996]).
The record is clear that the defendant was not in custody at any point until such time when he was asked to submit to the PBT.
Here, defendant went to the 122nd Precinct entirely on his own volition and chose to speak with the police. He freely walked around the precinct to speak with PO. Samarisi, who was seated behind the desk, while also tending to his young children. His children, who were less than 15 years old, were situated away from the desk where the officer and lieutenant were stationed. Neither did any police officer come out to stand next to defendant, nor were any commands issued to defendant. No reasonable person, innocent of any wrongdoing, would have thought that he or she was not free to leave.
Thus, defendant’s noticed statements made at the 122nd Precinct are admissible on the People’s direct case.
Probable cause requires the existence of facts and circumstances which, when viewed as a whole, would lead a reasonable person possessing the same expertise as the arresting officer to *669 conclude that an offense has been or is being committed, and that the defendant committed or is committing that offense (People v Bigelow, 66 NY2d 417, 423 [1985]; People v McRay, 51 NY2d 594, 602 [1980]; People v Hicks, 287 AD2d 649, 649 [2d Dept 2001]; People v Guo Fai Liu, 271 AD2d 695, 696 [2d Dept 2000], lv denied 95 NY2d 866 [2000]).
A finding of probable cause does not, however, require the same quantum of proof necessary to sustain a conviction, or to establish a prima facie case (Bigelow, 66 NY2d at 423; McRay, 51 NY2d at 602). Rather “it need merely appear more probable than not that a crime has taken place and that the one arrested is its perpetrator” (People v Hill, 146 AD2d 823, 824 [3d Dept 1989], lv denied 73 NY2d 1016 [1989]; see also People v Attebery, 223 AD2d 714, 715 [2d Dept 1996], lv denied 88 NY2d 844 [1996]).
Moreover, in determining whether a police officer has probable cause for an arrest, “the emphasis should not be narrowly focused on . . . any . . . single factor, but on an evaluation of the totality of circumstances, which takes into account the ‘realities of everyday life unfolding before a trained officer who has to confront, on a daily basis, similar incidents’ ” {People v Both-well, 261 AD2d 232, 234 [1st Dept 1999], Iv denied 93 NY2d 1026 [1999], quoting People v Graham, 211 AD2d 55, 58-59 [1st Dept 1995], Iv denied 86 NY2d 795 [1995]).
Based upon EO. Samarisi’s observations of defendant as to intoxication, as well as his statements that he drove with his children to the precinct (as well as the officer’s visual observation of the Econoline van parked across the street from the precinct), probable cause existed to arrest defendant for one or more charges under section 1192 of the Vehicle and Traffic Law {People v Shulman, 6 NY3d 1 [2005]; CPL 140.10 [1] [b]).
Under Vehicle and Traffic Law § 1194 (2) (f), a defendant’s refusal to submit to a chemical test is admissible at trial provided the Feople show that “the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal” (People v Thomas, 46 NY2d 100 [1978]; People v Richburg, 287 AD2d 790 [3d Dept 2001]; People v Anderson, 89 AD3d 1161 [3d Dept 2011]).
Here, as clearly demonstrated by the IDT video in evidence, defendant received sufficient warning in clear and unequivocal language of the effect of a refusal by him, and he persisted in his refusal to submit to the test.
*670 Thus, defendant’s motions to suppress are denied in all respects.
Reliability of the Intoxilyzer S-D2 and Admissibility of its Results at Trial
The court has carefully considered the arguments of both counsel and the authority enumerated in their memoranda.
It is a basic rule of statutory construction to give a statute its plain meaning (McKinney’s Cons Laws of NY, Book 1, Statutes §94).
Vehicle and Traffic Law § 1194 (4) (c) and 10 NYCRR 59.4, when combined, afford a patent statutory presumption as to the reliability of the Intoxilyzer S-D2. The legislature clearly intended for the New York State Department of Health to determine which instruments are reliable for use under Vehicle and Traffic Law § 1194 (4) (c).
Thus, there is no need for expert testimony as to the accuracy and reliability of the device as a predicate for the admissibility[5] at trial of any test results from that device (People v Hampe, 181 AD2d 238 [3d Dept 1992]; see also People v Robinson, 53 AD3d 63 [2d Dept 2008], lv denied 11 NY3d 857 [2008]; People v DeMarasse, 85 NY2d 842 [1995]). Each of these decisions directly supports the legislature’s intent with regard to those devices recognized as reliable by the Department of Health.
Defendant’s arguments as to certain “foundational requirements,” such as the video recording of the breath test, properly relate to weight, not admissibility. For instance, the withdrawing of blood from a motorist/defendant by those authorized under the Vehicle and Traffic Law is routinely not subject to video recording.
Subject to the customary threshold requirements to the admissibility of any evidence at trial, the results of defendant’s breath test are admissible. While particular criteria set forth by another trial court (People v Aliaj, 36 Misc 3d 682 [Sup Ct, NY County 2012]) may be elicited by the People and defense at trial, such relate to weight and not admissibility.
*671 Accordingly, defendant’s motions to suppress are denied in all respects, while the People’s motion to admit at trial the results of the Intoxilyzer S-D2 is granted to the extent specified herein.

. A Mapp portion of the hearing was initially ordered; however, it was rendered academic by virtue of the People’s concession that the seizure of defendant’s van was unlawful (hearing tr at 3, 4).

. This includes memoranda filed by the People (dated Nov. 1, 2013) and defense (dated Nov. 8, 2013) as to the reliability and admissibility of the Intoxilyzer S-D2.

. Contrary to defendant’s claims, EO. Samarisi observed no fresh damage or other indicia that he had recently been in an accident.

. This test, which was at the 122nd Frecinct, should not be confused with defendant’s latter refusal to submit to a separate chemical test at the intoxicated driver testing room in the 120th Precinct.

. While this authority obviates the need for a Frye hearing (Frye v United States, 293 F 1013, 1013 [1923]), it does not address the issue as to whether a party may elicit expert testimony with respect to the reliability of the device itself and the results therefrom at trial.