██ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KERMIT WILLIAMS, Appellant. [7 NYS3d 434]—

Appeal by the defendant from a judgment of the County Court, Suffolk County (Weber, J.), rendered May 8, 2012, convicting him of burglary in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress identification testimony, physical evidence, and his statements to law enforcement officials.

Ordered that the judgment is affirmed.

On September 5, 2010, at approximately 10:49 p.m., a police radio broadcast reported a burglary in progress at a house on North Oregon Road in West Babylon. Police officers responding to the address saw two perpetrators fleeing out of the back door of the house. Upon conducting a security sweep of the premises, one of the officers found a loaded revolver on the steps leading to the basement. After securing the gun, he broadcast over the radio that a gun had been recovered. Outside the house, the officers also found the 13-year-old complainant, who, upon arriving home that night and attempting to enter via the back door, had come upon three burglars. The burglars forced the complainant, at gunpoint, to lead them around the house, room by room, looking for money. The burglars left the complainant alone for a few moments and he ran outside. Eventually, he encountered the police and told them what happened.

The police officers were also advised over the radio that a black vehicle possibly involved in the burglary was parked at the corner of Phoenix Road and North Oregon Road. Approximately two minutes after that radio broadcast, two other officers arrived at that location. They observed codefendant Darrick Harrison sitting in a black Chrysler 300, with its lights off. When asked what he was doing in that area, Harrison

indicated that he was going to smoke marijuana while waiting for a friend. However, the officer questioning Harrison did not smell marijuana. The officers directed Harrison to get out of the vehicle. When Harrison exited the vehicle, he placed a cell phone on the roof of the vehicle. The cell phone rang repeatedly, but Harrison did not answer the phone. One of the officers asked Harrison whether he was going to answer the phone, and Harrison replied that the phone was not his. The officer then answered the phone and a male, who sounded as though he was out of breath, asked to be picked up on Straight Path near the Southern State Parkway. That area was in close proximity to the location of the burglary.

Another police officer was dispatched to the area of Straight Path near the Southern State Parkway. Upon arriving at that location, the officer observed the defendant walking southbound on Straight Path toward a parked vehicle. No one else was in the area. As the officer drove past the defendant, he saw the defendant turn his head to follow the police vehicle. The officer turned his vehicle around and saw the defendant, who appeared disheveled, get into the parked vehicle, which then drove away. After following the vehicle for several blocks, the officer stopped the vehicle.

Upon approaching the vehicle, the officer observed that the driver was calm and clean, while the defendant was sweaty and had a small amount of dirt on his shirt. The driver informed the officer that the defendant was an old friend who had called and asked to be picked up. The driver further advised the officer that he knew that something was wrong when the defendant called because the driver did not usually hear from the defendant, and the defendant had sounded out of breath. The officer then directed the defendant to get out of the vehicle.

The complainant was brought to the area for a showup identification. The defendant was arrested after the complainant identified him as one of the burglars who had entered the house. At the precinct station house, while being questioned by the detective assigned to the case, the complainant disclosed, for the first time, that the burglars' faces had been covered by masks during the entire incident.

The defendant correctly contends that the hearing court should have granted that branch of his omnibus motion which was to suppress the pretrial and in-court identification by the complainant. "The judicial toleration of promptly conducted at-the-scene showups rests on our objective that the police have reasonable assurances that they have arrested or detained the

right person" (*People v Duuvon*, 77 NY2d 541, 545 [1991]). Here, the hearing testimony demonstrated not only that the perpetrators' faces were covered during the entire time the complainant was with them, but also that the only description the complainant had previously provided to the police was that the perpetrators were black males. Under these circumstances, it cannot be said that the complainant's pretrial and in-court identification of the defendant was not founded on the fact that the defendant was the only person standing in the street, in handcuffs, surrounded by the police with high-beam headlights shining on his face, during the showup proceeding (*see People v Underwood*, 239 AD2d 366 [1997]; *cf. People v Duuvon*, 77 NY2d at 544-545). Nevertheless, the error in admitting this identification evidence at trial was harmless since the other evidence of the defendant's guilt, including oral and written statements he gave to the police admitting to his participation in the burglary, was overwhelming, and there is no reasonable possibility that the error might have contributed to his conviction (*see People v Allen*, 24 NY3d 441, 450 [2014]; *People v Martin*, 24 AD3d 470 [2005]; *People v Smith*, 22 AD3d 510 [2005]).

Furthermore, the evidence at the suppression hearing established that, under the circumstances, and "bearing in mind that '[p]robable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt' " (*People v Blasich*, 73 NY2d 673, 680 [1989], quoting *People v Bigelow*, 66 NY2d 417, 423 [1985]), it was reasonable for the police to conclude that it was more probable than not that the defendant was one of the perpetrators involved in the burglary (*see People v Campbell*, 120 AD3d 827 [2014]; *People v Capela*, 97 AD3d 760, 761 [2012]). "It is axiomatic that an officer may only seize and take into custody an individual when the officer has probable cause to believe that the person has committed a crime" (*People v Diaz*, 131 AD2d 690, 694 [1987]). "Probable cause to arrest requires the existence of facts and circumstances which, when viewed as a whole, would lead a reasonable person possessing the same expertise as the arresting officer to conclude that an offense has been or is being committed, and that the defendant committed or is committing that offense" (*People v Wright*, 8 AD3d 304, 306 [2004]; *see People v Bigelow*, 66 NY2d at 423; *People v Bothwell*, 261 AD2d 232, 234 [1999]). Here, the totality of the circumstances demonstrates that the police officers were alerted to the fact that a burglary was in progress, arrived at the scene in time to observe the perpetrators fleeing from the residence, and were provided with a description of the getaway car, the driver of

which received a phone call while he was being arrested from an out-of-breath individual asking to be picked up at a nearby location. The police observed the defendant in close proximity to the designated location. The defendant was walking alone toward a vehicle while looking sweaty and disheveled and acting furtively. After observing the defendant enter the vehicle, the police followed the vehicle. They lawfully stopped the vehicle upon reasonable suspicion that the defendant was involved in criminal activity. Thereafter, the driver's statements regarding the defendant's unusual request to be picked up, and further observations of the defendant's disheveled appearance, gave the officers probable cause to arrest him. Accordingly, while the complainant's pretrial and in-court identification should have been suppressed, the hearing court properly declined to suppress the defendant's inculpatory statements to the police and all evidence seized from him, as the police had probable cause to arrest the defendant upon the totality of the circumstances. Thereafter, he was properly advised of, and voluntarily waived, his rights under *Miranda v Arizona* (384 US 436 [1966]).

The defendant contends that certain trial testimony of the detective assigned to the case and of one of the responding police officers was improperly admitted because the testimony implicitly bolstered the erroneously admitted identification testimony of the complainant. This contention is unpreserved for appellate review. In any event, the defendant's contention with respect to the police officer's testimony is without merit. However, with respect to the detective, the challenged testimony adduced during the prosecutor's direct examination of the detective, who drove the complainant to the showup location, implicitly bolstered the identification testimony and was not "admissible for relevant, nonhearsay purposes" (*People v Chatmon*, 31 AD3d 781, 782 [2006]). Nevertheless, "the evidence of guilt was overwhelming and there was no significant probability that the error[ ] contributed to the defendant's conviction[ ]" (*People v Gopaul*, 112 AD3d 966, 967 [2013]; *see People v Howard*, 87 NY2d 940, 942 [1996]; *People v Crimmins*, 36 NY2d 230, 241-242 [1975]).

The defendant contends that the evidence was legally insufficient to support his conviction since all evidence gathered as a result of his allegedly improper detention and arrest should have been suppressed as fruit of the poisonous tree, and the remaining evidence presented at trial was legally insufficient to establish his guilt. This contention is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Gray*, 86 NY2d 10, 19

[1995]). In any event, this contention is without merit since only the identification evidence should have been suppressed and the detective's testimony stricken, and, viewing the remaining evidence in the light most favorable to the People (*see People v Cahill*, 2 NY3d 14, 57 [2003]; *People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Contes*, 60 NY2d 620, 621 [1983]), it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt.

Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]; *People v Danielson*, 9 NY3d 342 [2007]), we nevertheless accord great deference to the factfinder's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d 383, 410 [2004]; *People v Bleakley*, 69 NY2d at 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the properly admitted evidence (*see People v Romero*, 7 NY3d 633 [2006]).

The defendant failed to preserve for appellate review his contention that the sentence imposed by the County Court improperly penalized him for exercising his right to a jury trial since he did not set forth the issue on the record at the time of sentencing (*see People v Hurley*, 75 NY2d 887, 888 [1990]; *People v Perez*, 50 AD3d 1161, 1162 [2008]; *People v Brown*, 38 AD3d 676, 677 [2007]). In any event, "the fact that the sentence imposed after trial was greater than the sentence offered during plea negotiations is not, standing alone, an indication that the defendant was punished for exercising his right to trial" (*People v Ray*, 100 AD3d 933, 934 [2012]; *see People v Pena*, 50 NY2d 400, 412 [1980]; *People v Jimenez*, 84 AD3d 1268, 1269 [2011]; *People v Norris*, 34 AD3d 500, 501 [2006]). Moreover, in view of the serious nature of this offense and the defendant's prior criminal history, the sentence imposed was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]). Skelos, J.P., Austin, Sgroi and LaSalle, JJ., concur.