People v Geddes (2019 NY Slip Op 03072)





People v Geddes


2019 NY Slip Op 03072


Decided on April 24, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 24, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
SHERI S. ROMAN
SYLVIA O. HINDS-RADIX
HECTOR D. LASALLE, JJ.


2017-03596
 (Ind. No. 35/14)

[*1]The People of the State of New York, respondent,
v
Joshua Geddes, appellant.


Thomas R. Villecco, Jericho, NY, for appellant.
Madeline Singas, District Attorney, Mineola, NY (Tammy J. Smiley, Sarah S. Rabinowitz, and Jared A. Chester of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Terence P. Murphy, J.), rendered March 20, 2017, convicting him of unlawful fleeing of a police officer in a motor vehicle in the third degree, upon a jury verdict, and criminal possession of a weapon in the second degree (two counts), upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing pursuant to a stipulation in lieu of motions (Angelo A. Delligatti, J.), of the suppression of physical evidence.
ORDERED that the judgment is affirmed.
The defendant was charged with criminal possession of a weapon in the second degree (four counts) and unlawful fleeing of a police officer in a motor vehicle in the third degree. At a suppression hearing, Police Officer Sullivan testified that on December 9, 2013, at approximately 5:56 p.m., he was at the intersection of Linden Boulevard and Elmont Road in Nassau County when he received a radio transmission that a shooting had occurred approximately six blocks from his location. It was reported that a black car with tinted windows, occupied by at least one male, had fled the scene of the shooting. At approximately 6:00 p.m., Sullivan, who had pulled into a gas station at the intersection, observed a black car with dark tinted windows and an apparent bullet hole in the passenger side rear window pull into the gas station. The front windows were rolled down, and Sullivan observed that the vehicle was occupied by two black males. The driver was wearing a black hoodie and a skullcap, and the passenger was slumped in the seat and appeared to be in pain. Upon observing the bullet hole, Sullivan drew his firearm, pointed it at the occupants of the vehicle, and yelled at them, "[p]olice, stop the car." The driver turned his head slightly, but did not stop the vehicle. Sullivan ran alongside the car and continued to yell, "[s]top the car," but the driver ignored Sullivan's commands and quickly accelerated away from him westbound on Linden Boulevard. Sullivan transmitted a description of the vehicle and the direction it fled over the radio, and, moments later, a passing motorist who had been traveling eastbound on Linden Boulevard told Sullivan that the vehicle Sullivan had been chasing had just crashed about two blocks away.
Sergeant Schmaeling of the emergency services unit arrived at the crash scene, which was in the vicinity of 238th Street and Linden Boulevard. He observed that the black car was unoccupied and had one open door, and that there were two handguns and what appeared to be a bag of marijuana inside the car. A witness told the police that the occupants of the car were two short black males in their early 20s wearing skullcaps who had run south on 238th Street. The police broadcast this information over the radio.
The police established a perimeter in the area of 238th Street and Linden Boulevard. Sullivan and two other officers began to search the backyards of the houses along 238th Street, assisted by members of the emergency services and canine units. Schmaeling was supervising the search from the street, and he received a radio transmission reporting that a subject who had sustained a gunshot wound had been taken into custody within approximately 200 feet of Schmaeling's location. Sullivan later identified the subject, Kevin Hoofong, as the person who had been the passenger of the black car.
At around 6:45 p.m., as the canine units were progressing through the yards, Schmaeling noticed the defendant, whom Schmaeling described as a black male, between 20 and 30 years old, approximately five feet, three inches or five feet, five inches tall, weighing about 120 to 130 pounds, and wearing dark clothing, walking up the driveway in between two of the houses on 238th Street. The defendant's presence seemed unusual to Schmaeling because there was no one else on the street, and he thought that the canine units searching the yards might have forced the defendant out of hiding toward him. Schmaeling stopped the defendant in the driveway and asked him what he was doing. The defendant responded that he was meeting a friend on Davis Avenue to play video games. Schaemling thought the defendant's response was unusual and Schmaeling did not believe that there was a Davis Avenue anywhere in the vicinity of 238th Street. Schmaeling feared for his safety based on the information that he had received from the radio transmission, and he noticed a suspicious bulge in the defendant's back pocket, which Schmaeling suspected was a weapon. Schmaeling patted the defendant down and recovered a black skullcap from the defendant's back pocket.
Schmaeling asked another officer to watch the defendant while he went to speak with the owners of the property where he had encountered the defendant. Schmaeling ascertained that the residents did not know the defendant. Meanwhile, Sullivan arrived on the scene and identified the defendant as the driver of the black car. The defendant was then taken into custody.
At the conclusion of the hearing, the Supreme Court, among other things, denied suppression of the skullcap. The court determined that the police had probable cause to arrest the defendant, and that the skullcap was properly seized during a search incident to a lawful arrest.
After a jury trial, the defendant was found guilty of unlawful fleeing of a police officer in a motor vehicle in the third degree, but the jury was unable to reach a verdict on the charges of criminal possession of a weapon in the second degree and the court declared a mistrial on those counts. Subsequently, the defendant pleaded guilty to two counts of criminal possession of a weapon in the second degree. The defendant appeals.
The defendant's contention that the hearing court should have suppressed the skullcap because the search was not incident to a lawful arrest is without merit. "[P]robable cause to believe that the person arrested has committed a crime will justify the search of his person" (People v Smith, 59 NY2d 454, 458). "A finding of probable cause does not . . . require the same quantum of proof necessary to sustain a conviction, or to establish a prima facie case. Rather, it need merely appear more probable than not that a crime has taken place and that the one arrested is its perpetrator'" (People v Wright, 8 AD3d 304, 307 [citations omitted], quoting People v Hill, 146 AD2d 823, 824; see People v Bigelow, 66 NY2d 417, 423). "[I]n determining whether a police officer has probable cause for an arrest, the emphasis should not be narrowly focused on . . . any . . . single factor, but on an evaluation of the totality of circumstances, which takes into account the realities of everyday life unfolding before a trained officer who has to confront, on a daily basis, similar incidents" (People v Wright, 8 AD3d 304, 307 [internal quotation marks omitted]).
Here, the defendant matched the radioed description of one of the suspects, and Schmaeling encountered the defendant in close temporal and spatial proximity to the location of the crash scene where the suspects had last been seen. Additionally, Schmaeling was aware that a perimeter had been set up to prevent the suspects from escaping, and he testified that there was no one else on the street at the time he observed the defendant, whom he believed had likely been forced out of hiding by the canine unit. Moreover, Schmaeling was also aware that the wounded passenger from the black car had just been apprehended nearby. Based on the totality of the circumstances, Schmaeling had probable cause to arrest the defendant at the time that he recovered the skullcap from the defendant's back pocket (see People v Johnson, 63 AD3d 518; People v Charles, 222 [*2]AD2d 688, 689; People v Douglas, 185 AD2d 895, 895-896). Furthermore, because Schmaeling had probable cause to arrest the defendant at the time the skullcap was seized, "[i]t is immaterial that the seizure of this evidence occurred immediately before, rather than simultaneously with, the formal arrest" (People v Goggans, 155 AD2d 689, 691; see People v Charles, 222 AD2d at 689). Moreover, the defendant would have been arrested even if the search had not produced the skullcap (cf. People v Reid, 24 NY3d 615, 617; People v Simmons, 151 AD3d 628, 628-629).
Accordingly, we agree with the Supreme Court's determination to deny the suppression of the skullcap.
RIVERA, J.P., ROMAN, HINDS-RADIX and LASALLE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court