◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HECTOR S. LEIVA, Appellant. [823 NYS2d 494]—

Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Donnino, J.), rendered November 18, 2004, convicting him of possession of burglar's tools and conspiracy in the fourth degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

A police officer observed the defendant, who was driving a minivan, begin to make an unsignalled right hand turn. The officer then observed the defendant, as he attempted to "regain control of his vehicle . . . jump[ ] the curb, r[i]de over the grass

and c[o]me back down onto the road." The officer then stopped the minivan and approached the defendant.

The officer observed the defendant's passenger, who was "covering his face with a map." The officer concluded that the passenger "was in fact trying to hide his face from [her]." In response to the officer's question relating to his destination, the defendant replied that he was going to Seaford.

Having retrieved the defendant's license and registration, the officer returned to her patrol car. While she was speaking over the police radio, she became alarmed when both the defendant and his passenger emerged from the minivan and began walking toward her, thus engaging in behavior that was "very very rare" in the context of typical police-driver encounters.

Following the arrival of additional officers, and in response to further questions relating to his destination, the defendant contradicted his earlier statement, and now claimed to have been driving to Riverhead. A second officer observed that the defendant's passenger was dressed "in all black with a . . . Spandex type of material . . . almost like a dancer's pants." The Supreme Court, upon its review of a photograph of the passenger as he appeared after his arrest, described his clothing as consisting of an "all-black outfit [that] was reminiscent of a burglar's costume one might see in a comic book or at a Halloween party." The officers elicited the defendant's consent to a search of the minivan, and the ensuing search led to the discovery of burglar's tools.

The Supreme Court determined that, under the circumstances outlined above, the discovery of the burglar's tools inside the defendant's minivan was not the product of an illegal search, and denied that branch of the defendant's motion which was to suppress physical evidence. We affirm.

The initial stop of the vehicle was justified by the officer's observation of a violation of the Vehicle and Traffic Law, that is, the driver having made, or having begun to make, an unsignalled right hand turn (*see* Vehicle and Traffic Law § 1163 [d]; *Pennsylvania v Mimms*, 434 US 106, 106-109 [1977]; *People v Robinson*, 74 NY2d 773, 774 [1989], *cert denied* 493 US 966 [1989]; *see also* Vehicle and Traffic Law § 1128 [a]; *People v Parris*, 26 AD3d 393, 394 [2006]; *People v Thomas*, 19 AD3d 32 [2005]; *People v Tavarez*, 277 AD2d 260 [2000]). The officer had the right to ask questions relating to the defendant's destination, to request that he produce his license and registration, and to ask him to stand by momentarily pending further investigation (*see People v Thomas*, 19 AD3d 32, 37-38 [2005]; *People v Wright*, 8 AD3d 304, 306 [2004]; *People v Valerio*, 274 AD2d 950 [2000],

*affd* 95 NY2d 924 [2000], *cert denied* 532 US 981 [2001]; *see generally People v Hollman*, 79 NY2d 181, 185, 191 [1992]).

In light of the suspicious conduct of the defendant's passenger in attempting to cover his face with a map, in light of the "very very rare" conduct of the two men in later approaching the officer while she was speaking over the police radio, the defendant having given contradictory responses when asked about his destination, together with the various other circumstances revealed at the pretrial hearing, the officer at the very least had a founded suspicion that criminal activity was afoot so as to authorize her and the other officers to request the defendant's consent to a search of the minivan (*see People v Battaglia*, 86 NY2d 755, 756 [1995]; *People v Banks*, 85 NY2d 558 [1995], *cert denied* 516 US 868 [1995]; *People v Hollman*, 79 NY2d 181, 191-192 [1992]; *People v Hill*, 302 AD2d 958 [2003]; *People v Williams*, 300 AD2d 684 [2002]; *cf. People v Dunbar*, 5 NY3d 834 [2005]; *People v Milaski*, 62 NY2d 147, 156 [1984]; *People v Turriago*, 219 AD2d 383, 386-388 [1996], *mod on other grounds* 90 NY2d 77 [1997]).

The defendant's consent was obtained while the police were still processing the original traffic violation (*cf. People v Banks* 85 NY2d 558 [1995], *supra*). The presence of a number of police officers at the scene does not compel the conclusion that the defendant's consent to the search was coerced (*People v Phiefer*, 43 NY2d 719, 721 [1977]; *People v Buggs*, 140 AD2d 617 [1988]; *cf. People v Gonzalez*, 39 NY2d 122, 128-131 [1976]). The evidence supports the Supreme Court's conclusion that the defendant's consent to the search was voluntary, and the results of that search justified his arrest based on suspicion of possession of burglar's tools and conspiracy in the fourth degree (*see e.g. People v Borrero*, 26 NY2d 430, 434, 436 [1970]; *People v Diaz*, 23 NY2d 811 [1969]).

The defendant's remaining contentions are without merit. Florio, J.P., Goldstein, Luciano and Lunn, JJ., concur.