■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS EDWARDS, JR., Appellant. [884 NYS2d 528]—

Appeal from a judgment of the Erie County Court (Sheila A. DiTullio, J.), rendered April 3, 2008. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a controlled substance in the first degree and assault in the third degree.

It is hereby ordered that the judgment so appealed from is reversed on the law, the plea is vacated, that part of the motion seeking to suppress tangible property is granted, the first through fourth counts of the indictment are dismissed, and the matter is remitted to Erie County Court for further proceedings on the fifth count of the indictment.

Memorandum: On appeal from a judgment convicting him, upon his plea of guilty, of criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [1]) and assault in the third degree (§ 120.00 [2]), defendant contends that his extended detention at a roadside traffic stop by Sheriff's Deputies (Deputies) was unconstitutional and that County Court therefore erred in refusing to suppress the evidence seized as a result thereof. Although defendant does not challenge the initial stop of the vehicle that he was operating, he contends that he was then detained for a period of time and purpose that exceeded constitutionally permissible limits. We agree with defendant that the People did not establish at the suppression hearing that the Deputies had reasonable suspicion to extend the traffic stop after its initial justification was exhausted and thus that the court erred in denying that part of his omnibus motion seeking suppression.

At the suppression hearing, the Deputies testified that, after completing the investigation of defendant's vehicle for exces-

sively tinted windows in violation of Vehicle and Traffic Law § 375 (12-a) (b) (2), they had the information necessary for issuing a traffic ticket based on that violation. The Deputies admitted that, at that point in time, they had not observed any indicia of criminality during the course of the encounter. Nevertheless, the Deputies testified that they chose not to issue the traffic ticket and instead detained defendant because they "wanted to further investigate" in view of defendant's nervous appearance, based upon a "gut" feeling and their experience as narcotics officers. During the course of the further detention and investigation, one of the Deputies allegedly observed crumbs of crack cocaine on defendant's right palm. The Deputies directed defendant to exit his vehicle and demanded that he surrender the keys to the vehicle. The Deputies did not advise defendant that he was under arrest, but they continued to demand that he surrender his keys and ordered him to step to the rear of the vehicle. When defendant refused to surrender his keys, the Deputies attempted to brace defendant up against his vehicle, and a struggle ensued. The Deputies and defendant fell to the ground, and one of the Deputies was injured. The Deputies admitted that defendant "never once tried to strike [them]." Defendant was arrested, and when his vehicle was impounded and an inventory search of the vehicle was conducted, 8.892 ounces of cocaine were found in the vehicle. Following the denial of that part of his omnibus motion seeking suppression, defendant entered his plea of guilty but did not waive his right to appeal. Thus, his challenge to the court's suppression ruling is properly before us (cf. People v Kemp, 94 NY2d 831, 833 [1999]).

"A traffic stop constitutes a limited seizure of the person of each occupant" (People v Banks, 85 NY2d 558, 562 [1995], cert denied 516 US 868 [1995]). Furthermore, such a seizure and detention must be reasonably related in scope, including length, to the circumstances that justified the seizure and detention in the first instance (see United States v Sharpe, 470 US 675, 682 [1985]). In other words, "[t]he scope of the detention must be carefully tailored to its underlying justification" (Florida v Royer, 460 US 491, 500 [1983]). Here, although the initial seizure was justified, we conclude that the length and circumstances of the ensuing detention were not (see Banks, 85 NY2d at 562). Indeed, according to the testimony of the Deputies at the suppression hearing, they delayed their issuance of the traffic ticket to defendant for the specific purpose of further investigating defendant and his vehicle in the hope that the initial traffic stop would escalate into a drug investigation. The alleged observation of crumbs of crack cocaine on defendant's right palm by one of the Deputies occurred during the course of

the extended detention, and the inventory search of defendant's vehicle that led to the discovery of the narcotics "was the product of an inseparable illegal detention of defendant" (*id.* at 561). The Deputies' observation that defendant appeared to be nervous did not, by itself, provide the requisite reasonable suspicion of criminality to justify the extension of the initially valid traffic stop (*see People v Milaski*, 62 NY2d 147, 156 [1984]).

Because the Deputies' detention of defendant was unlawful by the time of the alleged assault, they were not engaged in the performance of a lawful duty to support the second count of the indictment, charging defendant with assault in the second degree (Penal Law § 120.05 [3]). That count therefore should have been dismissed (*see People v Voliton*, 190 AD2d 764, 767 [1993], *affd* 83 NY2d 192 [1994]). In addition, the fourth count of the indictment, charging defendant with resisting arrest, should have been dismissed because it is well settled that an essential element of the crime of resisting arrest is that the arrest be "authorized" (Penal Law § 205.30; *see Matter of Iyona G.*, 60 AD3d 1403 [2009]). Where, as here, a defendant's arrest is not authorized, the defendant cannot be guilty of resisting arrest (*see People v Peacock*, 68 NY2d 675 [1986]).

Similarly, a defendant may not be convicted of obstructing governmental administration in the second degree (Penal Law § 195.05) unless it is established that the public servants in question, here, the Deputies, "were engaged in authorized conduct" (*People v Lupinacci*, 191 AD2d 589 [1993]), and that was not the case herein. Thus, the third count of the indictment, charging defendant with obstructing governmental administration in the second degree, also should have been dismissed.

All concur except Scudder, P.J., and Peradotto, J., who dissent and vote to affirm in the following memorandum.

Scudder, P.J., and Peradotto, J. (dissenting). We respectfully dissent and would affirm because we do not agree with the majority's conclusion that the cocaine crumbs were observed by the police after the completion of the vehicle and traffic investigation (*see People v Banks*, 85 NY2d 558, 562-563 [1995], *cert denied* 516 US 868 [1995]).

The Sheriff's Deputies testified at the suppression hearing that they stopped defendant's vehicle because it appeared that the front driver and passenger windows were more darkly tinted than allowed by statute (Vehicle and Traffic Law § 375 [12-a] [b]). After pulling defendant's vehicle over, one Deputy (hereafter, first Deputy) approached the driver's window of the vehicle, while the second of the two Deputies (hereafter, second Deputy)

approached the front passenger window. Defendant rolled down both windows, and the first Deputy asked to see defendant's license and registration. The first Deputy noticed that defendant's right hand was trembling and shaking when defendant handed those documents to him, while the second Deputy noticed that defendant's legs were shaking, that defendant's voice was cracking, and that defendant's breathing was heavy. The first Deputy explained to defendant why his vehicle had been stopped, and that he was going to his police vehicle to retrieve a tint meter to measure the light transmittance of defendant's windows. The first Deputy then noticed that defendant's chest was rising and falling at a rapid pace, and that defendant's right leg was bouncing at a constant rate. Both Deputies testified that defendant's nervousness was excessive, far greater than that usually exhibited by individuals who are stopped for a vehicle and traffic violation. The first Deputy further testified that, in his experience, nervousness can reach a point where it is alarming, "and the end result is the person had a gun or drugs or something. So you have to be conscious of that." That Deputy retrieved the tint meter from his vehicle and measured the tint of the front windows, both of which had a visible light transmittance far below that required by law. He then walked back to the police vehicle to put the tint meter away, conferring with his fellow Deputy en route, and they both agreed that defendant was excessively nervous for a mere vehicle and traffic investigation. Consequently, after replacing the tint meter in the police vehicle, the first Deputy approached defendant's vehicle for a third time, to conduct further questioning. Before he had the opportunity to do so, he observed that defendant had cocaine crumbs, known as "shake," on his lower right palm. He then directed defendant to exit his vehicle, explaining that there were some issues concerning his license that the Deputies wanted to address. Defendant ultimately exited the vehicle, but when he was asked for his car keys, a standard request employed to prevent keys from being used as a weapon, defendant refused to let go of the keys. A struggle ensued, the first Deputy was injured, and defendant was arrested.

Based on these facts, the majority concludes that, because the Deputies had all of the information they needed to issue a traffic ticket at the conclusion of the second approach, the vehicle and traffic investigation was completed as of that point in time. The majority thus concludes that the Deputies' subsequent conduct constituted an illegal detention in violation of *Banks*. We cannot agree.

In *Banks*, the Court of Appeals held that, where the police

stop a defendant for violating a provision of the Vehicle and Traffic Law, the defendant may be detained with respect to that traffic violation only for as long as is necessary to complete an investigation into the traffic charge (85 NY2d at 562-563). However, neither *Banks* nor the Fourth Amendment provide that a traffic investigation is completed immediately after the police first obtain probable cause to issue a traffic summons (*see generally Hoffa v United States*, 385 US 293, 310 [1966], *reh denied* 386 US 940 [1967]; *People v Middleton*, 54 NY2d 474, 481 [1981]). Notably, in *Banks*, it was the continued detention of the defendant after the Trooper had already concluded the traffic investigation and decided to issue a traffic ticket that was found unconstitutional. His investigation prior to that point in time was neither challenged nor found objectionable even though the Trooper, who had personally observed the defendant not wearing a seat belt, would have been warranted in issuing a traffic ticket based on the defendant's failure to wear a seat belt as soon as he stopped the defendant's vehicle.

The touchstone of Fourth Amendment analysis has always been the reasonableness of the search or seizure in issue (*see Illinois v Rodriguez*, 497 US 177, 185-186 [1990]; *Pennsylvania v Mimms*, 434 US 106, 108-109 [1977]; *People v Hall*, 10 NY3d 303, 308 [2008], *cert denied* 555 US —, 129 S Ct 159 [2008]; *People v Batista*, 88 NY2d 650, 653 [1996]). The holding of *Banks* was also based on principles of reasonableness. Thus, in *Banks* the Court held that, for a traffic stop to pass constitutional muster, "the officer's [or Deputies'] action in stopping the vehicle must be justified at its inception and the seizure must be reasonably related in scope, including its length, to the circumstances which justified the detention in the first instance" (85 NY2d at 562). It clearly was reasonable for the Deputies in this case to obtain an objective measurement of the tint level of the windows before issuing a traffic ticket, instead of relying only on their visual observations. It was also reasonable for the first Deputy to return the tint meter to the police vehicle before issuing a traffic ticket, and to approach defendant's vehicle again after putting the tint meter away. Even if that Deputy had all of the information he needed to issue a traffic ticket prior to the third approach, he still could not complete the investigation without approaching defendant's vehicle one last time, either to issue a ticket or to allow defendant to leave the scene. That Deputy observed the cocaine crumbs as soon as he reached defendant's vehicle on the third approach, before he had a chance to say or do anything. Thus, his observations were made during the course of the vehicle and traffic investigation, not after that investigation was completed. Of course, as soon as the

first Deputy observed the cocaine crumbs on defendant's palm, he had probable cause to arrest defendant for possession of a controlled substance (*see generally People v Mizell*, 72 NY2d 651, 656 [1988]; *People v Rives*, 237 AD2d 312, 313 [1997], *lv denied* 90 NY2d 1013 [1997]).

The majority concludes that defendant was detained after the traffic investigation was completed because the Deputies never intended to issue a traffic ticket when they approached the vehicle on the third occasion, but instead intended to question defendant further based on his excessive nervousness. The validity of police conduct is not measured by the subjective intentions of the law enforcement officers, however (*see Brigham City v Stuart*, 547 US 398 [2006]; *People v Cooper*, 38 AD3d 678 [2007]; *People v Bandera*, 204 AD2d 340 [1994], *lv denied* 83 NY2d 1002 [1994]). Rather, it is measured by the objective circumstances, determined pursuant to a reasonable person standard (*see People v Hicks*, 68 NY2d 234, 240 [1986]; *see also People v Ellerbe*, 265 AD2d 569, 570 [1999], *lv denied* 94 NY2d 903 [2000]; *People v Jones*, 172 AD2d 265, 266 [1991], *lv denied* 78 NY2d 923 [1991]; *People v Hunt*, 155 AD2d 957, 958 [1989], *lv denied* 75 NY2d 814 [1990]). The first Deputy never relayed his intentions to defendant in this case. Thus, from a reasonable person's viewpoint, the only actions of the first Deputy were to approach defendant's vehicle the first time to advise defendant why he had been stopped and to inform defendant that he intended to measure defendant's windows with a tint meter; to approach defendant's vehicle a second time to measure the windows using the tint meter; and to approach defendant's vehicle a third time after putting away the tint meter to complete the traffic investigation by either issuing a traffic ticket or allowing defendant to leave. Such conduct does not constitute anything more than a routine investigation pursuant to Vehicle and Traffic Law § 375 (12-a) (b).

Nor does the frank testimony of the Deputies that they used traffic violations as a tool for investigating possible narcotics violations render the third approach of defendant's vehicle unconstitutional. Even if the underlying motive of the Deputies throughout this vehicle and traffic investigation was to uncover the possibility that defendant possessed drugs, that motivation does not render their conduct unconstitutional (*see People v Johnson*, 1 NY3d 252, 257 [2003]; *People v Robinson*, 97 NY2d 341, 349 [2001]). The fact of the matter is that defendant was lawfully stopped for a suspected violation of Vehicle and Traffic Law § 375 (12-a) (b), and that the Deputies' subsequent conduct was completely in accord with an investigation pursuant to that

statute. The subjective intentions of the Deputies during the course of the ensuing traffic investigation are therefore irrelevant (*see Robinson*, 97 NY2d at 349).

Finally, even if the subjective intent of the first Deputy to question defendant further upon his third approach of the vehicle was somehow relevant to the determination of whether defendant's arrest was lawful, we conclude that there was nothing improper about such additional questioning. Both Deputies testified that they wanted to question defendant further because he was excessively nervous, entirely out of proportion with respect to a vehicle and traffic violation. That excessive nervousness constituted an articulable reason for asking defendant further questions independent from the Vehicle and Traffic Law charge, if for no other reason than to ensure defendant's well-being (*see People v Faines*, 297 AD2d 590 [2002], *lv denied* 99 NY2d 558 [2002]). Because that articulable reason was lawfully obtained during the course of the vehicle and traffic investigation, the Deputies were well within their rights to question defendant commensurate with an articulable reason inquiry as set forth in *People v De Bour* (40 NY2d 210 [1976]; *see Faines*, 297 AD2d at 593-594; *see generally People v Noonan*, 220 AD2d 811, 812-813 [1995]).

We respectfully disagree with the majority to the extent that the majority asserts that the continued investigation of an individual following the completion of a traffic investigation must in every case be supported by a reasonable suspicion of criminality. As with any police-citizen encounter, the scope of police conduct following the completion of a traffic stop is determined by weighing the degree of the police intrusion against the known level of criminality (*see generally De Bour*, 40 NY2d 210 [1976]; *People v Nelson*, 266 AD2d 730, 731-732 [1999], *lv denied* 94 NY2d 865 [1999]). Thus, if the police conduct following the completion of the traffic investigation constitutes a detention, the police must have a reasonable suspicion of criminality independent from the traffic violation in order to render that detention lawful (*see Banks*, 85 NY2d at 562; *People v May*, 52 AD3d 147, 151-152 [2008]). However, if the police conduct following the completion of the traffic violation constitutes something less than a detention, reasonable suspicion is not required. If the police conduct is commensurate with a common-law inquiry pursuant to the second level of *De Bour*, the conduct is lawful provided that the police have a founded suspicion of criminality (*see People v Kelly*, 37 AD3d 866, 867 [2007], *lv denied* 8 NY3d 986 [2007]; *People v Leiva*, 33 AD3d 1021, 1023 [2006]). If the police conduct is commensurate with an approach to inquire

pursuant to the first level of *De Bour*, the conduct is lawful so long as the police have an articulable reason for making such inquiry (*see Faines*, 297 AD2d at 593-594). In this case, the police conduct that in the majority's view was objectionable consisted of the approach by the first Deputy on the third occasion to ask defendant further questions. Even assuming, arguendo, that such conduct occurred after the completion of the traffic investigation, we conclude that it at most constituted only an approach to inquire pursuant to the first level of *De Bour*, for which only an articulable reason for the inquiry was necessary. Defendant's excessive nervousness constituted an articulable reason justifying that inquiry (*see id.*).

We therefore conclude that the Deputies' conduct prior to discovering the cocaine crumbs on defendant's palm was neither unconstitutional nor in violation of *Banks*. Once the first Deputy observed the cocaine crumbs, the Deputies had probable cause to arrest defendant based on his possession of narcotics, justifying their subsequent conduct in asking defendant to exit the vehicle and in forcibly placing him under arrest. Present—Scudder, P.J., Fahey, Peradotto, Carni and Green, JJ.