OPINION OF THE COURT
Terry Jane Ruderman, J.
Background
Claimant brings this claim for false arrest, false imprisonment and malicious prosecution arising out of a traffic stop by New York State Troopers which occurred just before 3:00 a.m. on August 2, 2005. The vehicle claimant was driving failed to have its rear license plate lamp illuminated as mandated by Vehicle and Traffic Law § 375 (2) (a) (4). Upon learning that claimant was not the registered owner of the vehicle, the Trooper decided not to issue claimant a ticket, but rather to give claimant a verbal warning and to show him the violation which needed to be corrected. As claimant exited the vehicle and walked toward the rear of the car, the Trooper noticed a bulge in claimant’s pocket which was later discovered to be an 8.8-ounce triangular-shaped block of cocaine, measuring 4 by 41/2 inches and 13/4 inches thick. Claimant was arrested and handcuffed. An additional 5.4 ounces of cocaine were retrieved from claimant’s other pocket and marijuana was recovered from an inventory search of the vehicle. According to the Trooper, and as indicated in the arrest report, eight minutes elapsed from the time of the initial stop for the traffic violation until claimant was handcuffed (exhibit A).
Claimant was subsequently charged with criminal possession of a controlled substance in the first degree (Penal Law § 220.21); criminal possession of a narcotic drug with intent to sell (Penal Law § 220.16 [1]); unlawful possession of marijuana (Penal Law § 221.05); and violation of a condition of sentence-probation (CPL 410.40 [2]) (exhibit A). He was indicted in Rock-land County and confined in the Rockland County Correctional Facility. On February 1, 2006, a suppression hearing was held before the Honorable Catherine Bartlett in the County Court, County of Rockland. By decision of that court dated February *338 10, 2006, all of the drugs recovered from claimant and the vehicle were suppressed (exhibit 2). Approximately one week later, the indictment was dismissed and sealed, and claimant was released from custody.
Court of Claims Action
Claimant seeks money damages in this court arguing that, even if the initial stop for the traffic infraction was justified, the Troopers thereafter acted in bad faith by unreasonably detaining claimant and searching him after the lawfulness of the detention had been exhausted. The trial of this claim was bifurcated and this decision pertains solely to the issue of liability.
Claimant testified that on August 2, 2005, he was traveling with his friend, Lashon Turner, northbound on the New York State Thruway from the Bronx en route to Albany. Claimant was driving a Jeep Cherokee owned by Turner’s girlfriend. They had just crossed the Tappan Zee Bridge and were continuing on Interstate 87 (1-87) when claimant observed a New York State Trooper car on the right shoulder. The Troopers approached from behind and directed claimant to pull over to the right shoulder. The Jeep stopped on a dirt pebble surface and the Trooper car was behind at a distance of approximately seven feet.
Trooper Hoeverman approached the Jeep and requested claimant’s license and registration. Claimant complied and Hoeverman walked back to the patrol car. According to claimant, Hoeverman returned and ordered claimant out of the Jeep and directed him to the back of the vehicle. Claimant complied. The Trooper then “got behind” claimant and patted him down from the back (T at 174).* Claimant testified: “I don’t think he said nothing about I’m going to pat you down. He probably asked me like miscellaneous questions. . . . I’m like what happened, what happened, what’s the problem? Nothing. . . . Then, you know, he patted me down or whatever.” (T at 175-176.)
Hoeverman retrieved a package of cocaine and several hundred dollars from claimant’s left pants pocket and more cocaine from claimant’s right pants pocket. Claimant was placed under arrest and handcuffed. Marijuana was later retrieved from an inventory search of the Jeep.
Claimant’s criminal history includes convictions for the sale of a controlled substance and the possession of a weapon and, *339 although concededly aware that he had cocaine in his pocket when he was ordered out of the Jeep, claimant maintains that he was not nervous and was not sweating (T at 176, 187). Claimant also denied turning his pockets away from the Trooper’s view (T at 188).
New York State Trooper Kevin Hoeverman testified that on August 2, 2005, while on patrol, he was driving northbound on the Tappan Zee Bridge with Trooper Michael Masino. Shortly before 2:57 a.m., Hoeverman noticed a Jeep without its rear license plate lamp illuminated, in violation of Vehicle and Traffic Law § 375 (2) (a) (4). He could not tell the race, gender or number of occupants in the vehicle because its rear window was tinted. After crossing the bridge, Hoeverman activated his emergency lights and siren and directed the Jeep to pull over on 1-87 near the acceleration ramp at milemarker 16.9 in the Village of South Nyack.
Hoeverman proceeded to the driver’s side of the Jeep as Masino walked toward the passenger’s side. Hoeverman requested claimant’s license and registration and advised him that he was being stopped for a vehicle and traffic violation. Claimant stated that a woman in Albany owned the Jeep and, in response to Hoeverman’s inquiries, claimant indicated that he was traveling from the Bronx to Albany. Hoeverman returned to the patrol car to check the status of claimant’s license and the vehicle’s registration. Hoeverman learned that both documents were valid.
Hoeverman decided that, because claimant was not the registered owner of the car, Hoeverman would exercise his discretion and give claimant a verbal warning and show him the light which was not functioning, rather than issue claimant a ticket. Hoeverman explained that violators of Vehicle and Traffic Law § 375 are permitted 24 hours to make the necessary repair to put the vehicle in compliance with the Vehicle and Traffic Law. The Jeep was parked next to the acceleration lane for the on-ramp to the highway. Therefore, for his own safety from the passing vehicles, Hoeverman directed claimant to the rear of the Jeep to give claimant a verbal warning and show him the broken light.
As claimant exited the Jeep, Hoeverman observed a large bulge in claimant’s left pants pocket. According to Hoeverman, claimant was sweating and holding his wallet in one hand, while trying to place his other hand in his pocket. Hoeverman directed claimant to keep his hands out of his pockets. Claimant initially *340 complied, but then tried to place his hands in his pockets on two or three occasions. When asked if he had anything in his pockets, claimant replied, “nothing” (T at 151), an answer which clearly contradicted Hoeverman’s observations of a bulge. Claimant then turned his body in a 45-degree angle to Hoeverman, in a combative stance which Hoeverman described as “bla[d]ing” (T at 141).
Due to the totality of the circumstances, Hoeverman became concerned for his safety and suspected that claimant could have a gun in his pocket. Hoeverman touched the outside of claimant’s pocket and felt a hard triangular object which Hoeverman believed to be a gun. Hoeverman did not squeeze the object with his fingers because, if it were a gun, it could discharge. Hoeverman placed his hand in claimant’s pocket and removed a large white chunk of powder in a plastic bag with money folded outside the bag. The substance was 8.8 ounces of cocaine (exhibits B, C).
At 3:05 a.m., eight minutes after the initial stop, claimant was arrested and handcuffed. A further search of claimant, incident to the arrest, uncovered 5.4 ounces of cocaine in his other pocket. Claimant was transported to the State Police barracks in Tarrytown where Hoeverman completed a felony complaint and the related paperwork. He also issued claimant a ticket for the equipment violation.
Trooper Michael Masino testified that after the package was removed from claimant’s left pants pocket, Masino performed a field test which indicated that the substance was cocaine. Masino testified that the block of cocaine was similar in size and shape to a gun he owned.
Analysis
To establish his cause of action for false arrest or imprisonment claimant must show: (1) that defendant intended to confine him; (2) he was conscious of the confinement; (3) he did not consent to the confinement; and (4) the confinement was not otherwise privileged (Broughton v State of New York, 37 NY2d 451, 456 [1975]). A claim for malicious prosecution requires claimant to establish: (1) the commencement or continuation of a criminal proceeding by defendant against claimant; (2) the termination of the proceeding in favor of claimant; (3) an absence of probable cause for the criminal proceeding; and (4) actual malice (see Broughton v State of New York, 37 NY2d at 457).
*341 Upon consideration of all the evidence, including listening to the witnesses testify and observing their demeanor as they did so, this court finds that claimant failed to meet his burden of proof on all the claims alleged. While claimant’s testimony strained credulity, the testimony of the Troopers was forthright and credible. This court finds that the credible evidence established that claimant was lawfully stopped at 2:57 a.m. pursuant to a Vehicle and Traffic Law violation and that during the course of the investigation of the traffic infraction, the Trooper developed probable cause to believe that claimant had a weapon in his pocket. Thus, the ensuing frisk, search and arrest were privileged and lawful. Accordingly, claimant cannot prevail on his claims for false arrest, false imprisonment and malicious prosecution (see Broughton v State of New York, 37 NY2d at 458).
Case Law Developments Since the County Court’s Suppression
This court is mindful that its decision is contrary to the findings of the County Court Judge who suppressed all the evidence obtained from the search of claimant and the vehicle based upon her conclusion that the evidence was recovered as a result of an “illegally-prolonged detention” (exhibits 1, 2 at 6). It is noted, however, that the County Court’s decision was rendered in February 2006. Subsequently, in February 2010, the Court of Appeals addressed a suppression issue arising out of a situation similar to the one presented in this case (see People v Edwards, 14 NY3d 741 [2010]). The factual details are set forth in the Appellate Division decision rendered in People v Edwards (65 AD3d 829 [2009]), where two Justices dissented. Many of the arguments addressed by the Appellate Division are the same as those argued before this court.
In Edwards, the defendant’s vehicle was lawfully stopped to investigate a possible traffic infraction for excessively tinted windows. The majority opinion of the Appellate Division held that after obtaining the necessary information for the issuance of a traffic ticket based upon a violation of the Vehicle and Traffic Law, the investigation was completed and the police admitted that they had not observed any indicia of criminality during the course of the encounter (id. at 831). The officers testified that they chose not to issue the defendant a traffic ticket; rather they detained him because defendant appeared nervous and the officers’ experience led them to believe that defendant may be in possession of a gun or drugs. During the course of what the *342 majority referred to as the “further” investigation and detention {id. at 831), upon approaching the vehicle for the third time, one of the officers observed crumbs of crack cocaine on defendant’s palm. Defendant was ordered out of the vehicle and directed to its rear. Defendant was not advised that he was under arrest. Defendant did not comply with the orders and the vehicle was impounded. A search of the vehicle revealed 8.892 ounces of cocaine. The Appellate Division majority held that, although the initial stop was justified, the length and circumstances of the ensuing detention were unlawful and the defendant’s nervousness, without more, did not provide the requisite reasonable suspicion to justify the extension of the initially valid traffic stop.
The dissenting Justices disagreed and noted that a defendant may be detained with respect to a traffic infraction for as long as is necessary to complete an investigation into the traffic charge and that neither case law nor the Constitution provides that a traffic investigation is completed immediately after the police first obtain probable cause to issue a traffic summons {id. at 834). The dissenting opinion further reasoned that, even if the officer had all the information necessary to issue a traffic ticket prior to his third approach to defendant’s vehicle, he still could not complete the investigation without approaching the vehicle again either to issue a ticket or to allow the defendant to leave the scene. The officer observed the cocaine crumbs on his third approach to the vehicle before he could say or do anything. Thus, the dissenters concluded that the officer’s observations were made during the course of the vehicle and traffic investigation and not after the investigation was completed {id.), and that, as soon as the cocaine crumbs were observed, there was probable cause to arrest defendant for possession of a controlled substance.
The dissenters further disagreed with the majority’s conclusion that the defendant was detained after the investigation was completed because the officers never intended to issue a traffic ticket when they approached defendant’s vehicle on the third occasion; rather, they intended to question defendant further based upon his excessive nervousness. The dissenters noted that the validity of police conduct is not measured by the officers’ subjective intention, but rather by the reasonableness standard based upon the objective circumstances. The motivation of the officers to possibly uncover drugs in defendant’s possession does not render the officers’ conduct unconstitutional *343 (id. at 835). The dissenting opinion found the officers’ further inquiry was reasonably justified due to defendant’s excessive nervousness.
In reversing the majority opinion of the Appellate Division, the Court of Appeals made the following findings. The initial stop of the vehicle for a possible traffic infraction was permissible and the officers’ subjective motivation to investigate possible drug activity did not negate the objective reasonableness of the officers’ actions. Further, “as a matter of law, the officers did not inordinately prolong the detention beyond what was reasonable under the circumstances to address the traffic infraction” (People v Edwards, 14 NY3d at 742). The drugs were first observed while the officers had a justifiable basis to continue the detention for the traffic infraction and that observation provided probable cause to arrest and search the defendant.
Conclusion
So too here, this court finds that the credible evidence established that the Troopers lawfully stopped the Jeep and did not inordinately prolong the detention beyond what was reasonable under the circumstances to address the traffic infraction. Indeed, claimant was detained a total of eight minutes. During the course of addressing the traffic violation and directing claimant to the nonfunctioning lamp at the rear of the vehicle, the Trooper made observations which gave him probable cause to frisk, search and arrest claimant, and to impound the vehicle for an inventory search. Specifically, when the Trooper directed claimant to the rear of the vehicle to show him the nonfunctioning lightbulb, which was not in compliance with the Vehicle and Traffic Law, the Trooper observed a large bulge in claimant’s pocket. The Trooper noted that it could not be claimant’s wallet because he was holding that in his hand. Claimant appeared very nervous and denied having anything in his pockets, as he attempted to turn his pockets away from the Trooper’s view. Despite the Trooper’s commands, claimant tried to place his hands in his pockets on more than one occasion. Claimant assumed a combative stance and the Trooper had reason to believe claimant may be in possession of a weapon; therefore the Trooper touched the outside of claimant’s pants pocket. The Trooper felt a hard triangular object which he thought may be a gun. In fact, it was an 8.8-ounce, triangular-shaped block of cocaine, measuring 4 by 4V2 inches and inches thick. Claimant was arrested and handcuffed. A further search of his person *344 revealed another 5.4 ounces of cocaine and an inventory search of the vehicle uncovered marijuana.
Consistent with the Court of Appeals findings in Edwards, this court finds that the observations of the Trooper were made during the course of a lawful detainment pursuant to a traffic infraction and that the Troopers did not inordinately prolong the detainment beyond what was reasonable under the circumstances. Thus, the actions of the Troopers were lawful and justified (see People v Edwards, 14 NY3d 741 [2010], supra; People v Kelly, 37 AD3d 866 [2007] [officers’ founded suspicion developed before the justification for the initial stop and detention was exhausted and claimant’s claim for money damages warrants dismissal]). Therefore, claimant cannot prevail on ids claims for false arrest, false imprisonment and malicious prosecution because the confinement was privileged and lawful (see Broughton v State of New York, 37 NY2d at 458).
The motion to dismiss, upon which decision was reserved, is now granted.

 All references to the trial transcript are preceded by the letter “T.”